# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>AGRIPROCESSORS, INC., SHOLOM RUBASHKIN, BRENT BEEBE, HOSAM AMARA and ZEEV LEVI,<br><br>　　　　Defendants. | No. 08-CR-1324-LRR<br><br>**ORDER** |

## I.  INTRODUCTION

The matter before the court is Defendant Sholom Rubashkin's "Motion for a Change of Venue" ("Motion") (docket no. 209).

## II.  RELEVANT PRIOR PROCEEDINGS

On January 29, 2009, Defendant Rubashkin filed the Motion.  On February 17, 2009, Defendant Agriprocessors, Inc. ("Agriprocessors") filed a Joinder (docket no. 333) to the Motion.  On February 20, 2009, Defendant Brent Beebe filed a "Position Re: Change of Venue" ("Position") (docket no. 354).  Also on February 20, 2009, the government filed a Resistance (docket nos. 361) to the Motion.  On February 24, 2009, Defendant Rubashkin filed a Reply (docket no. 375).

On February 23, 2009, the court held a hearing ("Hearing") on the Motion. Attorneys Guy R. Cook and F. Montgomery Brown represented Defendant Rubashkin. Attorney James A. Clarity, III represented Defendant Agriprocessors.  Attorney Raphael M. Scheetz represented Defendant Beebe.  Defendants Rubashkin and Beebe were personally present.

At the Hearing, the court received evidence and heard argument on the Motion. The court reserved ruling on the admissibility of various documentary exhibits.  *See*

Exhibit & Witness List (docket no. 374), at 1 (reflecting that the court did not formally receive the parties' exhibits). The court now formally receives into evidence Government Exhibits 1 through 5 and Defendant Rubashkin's Exhibits A through E.

The court finds that the Motion is fully submitted and ready for decision.

### III.  ANALYSIS

#### A.  *Parties' Positions*

Defendants Rubashkin and Agriprocessors ask the court to move the trial of this matter to "Minneapolis, Minnesota or Chicago, Illinois," pursuant to Federal Rule of Criminal Procedure 21(a) and the Fifth and Sixth Amendments to the United States Constitution. Motion at 3.[1] Defendant Rubashkin opines that he cannot receive a fair trial in the Northern District of Iowa because of extensive, inflammatory and adverse pretrial publicity. He asserts that the court must presume prejudice from such publicity and transfer venue elsewhere without waiting for voir dire. In support of the Motion, Defendant Rubashkin presented the court with (1) hundreds of pages of articles from various print and other media outlets, including *The Cedar Rapids Gazette*, *The Des Moines Register*, *The Dubuque Telegraph-Herald*, *The New York Times*, *The Iowa Independent* and the "State 29" blog; (2) Stephen G. Bloom's 2001 book, Postville: A Clash of Cultures in Heartland America ("Postville"); (3) an audiotape from the WHO radio program *Michaelson in the Morning*; and (4) a transcript of testimony before the Subcommittee on Immigration, Citizenship, Refugees, Border Security, and International Law of the House Committee on the Judiciary in July of 2008.

Defendant Beebe resists the Motion. Defendant Beebe states he "shares some of

---

[1] Defendant Agriprocessors joins the Motion in all respects but did not file its own brief. At the Hearing, counsel for Agriprocessors referred to the State of Iowa as "poison" and opined that, absent a change of venue, his client would be brought "back to Poland in 1939." This argument is beyond the pale and greatly demeans those who suffered at the cruel hands of the Nazis. It does not merit analysis from the court.

2

the concerns" of Defendants Rubashkin and Agriprocessors but counsels the court to adopt a "wait-and-see" approach. Position at 1. Defendant Beebe argues that, instead of presuming prejudice, the court should first attempt to empanel a fair and impartial jury. Defendant Beebe points out that changing the venue of this case would cause him "difficulties," including:

> the increased difficulty and expense of transport and lodging of defense trial witnesses; making sure trial witnesses appear for a trial outside the State; the ability to investigate during the trial and to locate and secure rebuttal witnesses; the convenience of counsel in being close to his office, both from a logistical and financial point of view; and, the effect a lengthy trial far from home would have on a defendant who might otherwise enjoy the moral support of family and friends.

*Id.* at 2.[2]

The government also resists the Motion. The government argues that the pretrial publicity in this case does not warrant a change of venue and, on the present record, the court cannot presume Defendants Rubashkin and Agriprocessors suffered prejudice on account of the adverse pretrial publicity. The government asks the court to defer ruling on whether to change the venue of the trial until after voir dire. The government also encourages the court to consider a number of other lesser, alternative measures to ensure a fair trial. These measures, which include the dissemination of preliminary juror questionnaires, assembling an unusually large juror pool and increasing the number of peremptory strikes available to the parties, are set forth and discussed at length in *United States v. Johnson*, 354 F. Supp. 2d 939, 985-89 (N.D. Iowa 2005) (Bennett, C.J.)

---

[2] The court notes that a change of venue might also adversely affect the rights of alleged victims to appear at court proceedings. *See* 18 U.S.C. § 3771(a)(8) (directing district courts to treat victims "with fairness"); *cf. United States v. Kanner*, No. 07-CR-1023-LRR, 2008 WL 2663414, *8 (N.D. Iowa June 27, 2008) (weighing the rights of victims to attend court proceedings as a factor in a discretionary venue transfer analysis).

(reserving ruling on pretrial motion to change venue pursuant to Rule 21(a) in a case with "perhaps more extensive [pretrial publicity] than the pretrial publicity for any other case in Iowa history"), *aff'd in part on other grounds*, 495 F.3d 951 (8th Cir. 2007), *cert. denied*, 129 S. Ct. 32 (2008).

## *B. Law*

"It is a fundamental tenet of due process that a defendant is entitled to have his guilt determined by a fair and impartial jury." *United States v. Green*, 983 F.2d 100, 102 (8th Cir. 1992). To this end, the Federal Rules of Criminal Procedure provide:

> Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.

Fed. R. Crim. P. 21(a).

Defendant bears the burden to prove he is entitled to a change in venue due to adverse pretrial publicity. *United States v. Delay*, 500 F.2d 1360, 1365 (8th Cir. 1974); *United States v. Holder*, 399 F. Supp. 220, 225 (D.S.D. 1975) (McManus, J., sitting by designation). Further, "[a] pretrial venue change is called for only in those situations where the pretrial publicity in a community is so extensive and inflammatory as to raise a presumption that an impartial jury could not be seated there." *United States v. Bliss*, 735 F.2d 294, 298 (8th Cir. 1984). A defendant must show that "there exists in the district so great a prejudice against [him] that he cannot obtain a fair trial. . . ." *United States v. Buttorff*, 572 F.2d 619, 627 (8th Cir. 1978).

The Eighth Circuit Court of Appeals "prefer[s] for the court to await voir dire before ruling on motions for a change of venue." *Green*, 983 F.2d at 102. Adopting such a "wait-and-see" approach is ordinarily appropriate because

> at that point the trial court has the information necessary to conduct the due process analysis called for by the Supreme

4

> Court in *Beck v. Washington*[, 369 U.S. 541, 557 (1962)], namely, whether the 'pretrial publicity was so intensive and extensive or the examination of the entire panel revealed such prejudice that a court could not believe the answers of the jurors [regarding their impartiality] and would be compelled to find bias or preformed opinion as a matter of law.

*Id.* (quoting *Bliss*, 735 F.2d at 298)).

On appeal, the Eighth Circuit Court of Appeals engages in a two-tiered analysis for evaluating the denial of a defendant's request for change of venue based on adverse pretrial publicity. *United States v. Gamboa*, 439 F.3d 796, 815 (8th Cir. 2006). First, the Court determines "whether the pretrial publicity was so extensive and corrupting" that "'unfairness of a constitutional magnitude'" is presumed. *United States v. Nelson*, 347 F.3d 701, 707 (8th Cir. 2003) (citation omitted); *United States v. Allee*, 299 F.3d 996, 1000 (8th Cir. 2002). If and only if a presumption of prejudice is not warranted, the Eighth Circuit Court of Appeals then conducts a second analysis. *Allee*, 299 F.3d at 1000. At the second-tier, the Eighth Circuit Court of Appeals evaluates the voir dire testimony of the trial jurors to determine "if they demonstrated such actual prejudice that it was an abuse of discretion to deny a timely change-of-venue motion." *Id.* (citation omitted).

## *C. Analysis*

At this stage in the proceedings, the court declines to presume prejudice and transfer venue of the charges against Defendants Rubashkin and Agriprocessors. Based upon the record presently before the court, the court is unable to hold that the pretrial publicity was so extensive and corrupting as to Defendants Rubashkin and Agriprocessors that unfairness of a constitutional magnitude must be presumed. The court shall heed the admonition of the Eighth Circuit Court of Appeals to await voir dire before issuing a final ruling as to whether a change of venue is appropriate. Accordingly, the court shall deny the Motion with leave to refile after voir dire.

The court recognizes that Defendants Rubashkin and Agriprocessors have received

substantial adverse pretrial publicity in the mainstream print media. For example, on August 24, 2008, the Governor of the State of Iowa, Chet Culver, wrote a guest column in *The Des Moines Register*. Governor Culver accused Agriprocessors and its "owners" of "tak[ing] advantage of a failed immigration system" and "deliberately cho[osing] to take the low road." Def.'s Ex. A (docket no. 209-16), at 250. Governor Culver called upon Iowa Attorney General Thomas Miller "in the strongest terms," "promptly to prosecute all alleged criminal and civil-law violations that are backed by sufficient evidence." *Id.* at 251. Governor Culver invoked the horrors of Upton Sinclair's classic novel, The Jungle, and warned: "There will be no industrial 'jungles' in Iowa on my watch." *Id.*

The issue before the court is not, however, whether Defendants Rubashkin and Agriprocessors have received "bad press" from persons in high places. As counsel for Defendant Rubashkin pointed out at the Hearing, the issue is simply whether Defendants Rubashkin and Agriprocessors will be able to receive a fair trial in the Northern District of Iowa. *See Allee*, 299 F.3d at 1000 ("The mere existence of press coverage . . . is not sufficient to create a presumption of inherent prejudice and thus warrant a change of venue.").

At present, the impact of Governor Culver's guest column, as well as the other articles and items Defendant Rubashkin presented to the court at the Hearing, is unclear. Several factors suggest the sheer number of print media articles may not have as much impact upon the jury pool as Defendants Rubashkin and Agriprocessors suggest. First, there will be a substantial gap in time between much of the bad press and the trial(s) of this matter. It appears the bad press was at its zenith in the months immediately following May of 2008, when federal agents raided Agriprocessors and hundreds of its workers were arrested on immigration-related charges. Trial, however, is not scheduled to begin until September of 2009—Defendants Rubashkin, Agriprocessors and Beebe asked for and received a continuance to prepare for the trial of this complex case. As the government

points out, this substantial delay tends to vitiate any prejudice Defendants Rubashkin and Agriprocessors might otherwise have suffered from adverse pretrial publicity had the trial occurred last year. *Cf. Allee*, 299 F.3d at 1000 (holding that one-year gap in time between the time of the defendant's arrest and the trial forestalled prejudice).

     Defendants Rubashkin and Agriprocessors also appear to place too much emphasis on the role of the print media in contemporary society. The court declines to blindly assume that newspaper articles have so corrupted the jury pool that Defendants Rubashkin and Agriprocessors will be unable to obtain a fair trial. *Cf. Rideau v. State of La.*, 373 U.S. 723, 723-27 (1963) (holding denial of motion to change venue denied a defendant due process, where a local television station had played his videotaped confession to robbery, kidnapping and murder to tens of thousands of people in his community on three separate occasions ). The role and influence of the printed newspaper in society is not the same as it was a generation ago. Similarly, the court does not know how widely read Postville is among prospective jurors. The book predates the trial by the better part of a decade, although it is apparently still in print.

     It would be irresponsible for the court to categorically impute the vitriolic comments of those who post comments in online newspapers and on other websites to the jury pool. The court has no way to know whether most of the comments on the Internet are written by potential jurors as opposed to minors, non-residents or other persons unable to serve on the jury. Likewise, the court has no reason to believe the comments are widely read. *Cf. Gotbaum ex rel. Gotbaum v. City of Phoenix*, No. CV-08-0937-PHX-DGC, 2008 WL 4628675, *2-*3 (D. Ariz. Oct. 17, 2008) (denying motion to transfer civil case to another district based on allegedly prejudicial "blog comments," because the movant "provide[d] no reason to conclude that the comments of these bloggers represent the views of the jury pool at large" or any "reason to believe that the blog comments have been widely read").

     In sum, some of the materials submitted to the court are troubling and bolster the

7

arguments of Defendants Rubashkin and Agriprocessors that a change of venue is appropriate to ensure their Due Process rights are not violated. Further, the court is mindful that this case is "on-going" and adverse pretrial publicity "may intensify as the date for trial approaches." *Johnson*, 354 F. Supp. 2d at 985. At this moment, however, the court declines to presume prejudice, that is, the court does not find that the pretrial publicity in the community is so extensive and inflammatory as to raise a presumption that an impartial jury could not be seated in the Northern District of Iowa in September of 2009. *Bliss*, 735 F.2d at 298.

      Accordingly, the court shall deny the Motion with leave to refile. The court shall grant Defendants Rubashkin and Agriprocessors the right to renew their request for a change of venue following voir dire. *Cf. Johnson*, 354 F. Supp. 2d at 986-87 (citing *Green*, 983 F.2d at 102); *United States v. Bentley*, No. 06-CR-155-LRR, 2007 WL 294284, *3 (N.D. Iowa Jan. 29, 2007 (Reade, J.) (permitting the defendant in a high-profile case involving the sexual exploitation of a minor to reassert his motion to change venue after voir dire). In the interim and after consultation with the parties, the court shall adopt lesser, alternative measures to determine whether transfer is required. *Cf. Johnson*, 354 F. Supp. 2d at 986-87. The court has already reserved four days for voir dire as opposed to the usual half-day voir dire. In the near future, the court shall direct the parties to work together to craft a questionnaire to be distributed to prospective jurors. *Cf. id.* (citing *Nelson*, 347 F.3d at 709 and *Blom*, 242 F.3d at 84). The questionnaire will gather information about each potential juror's exposure to adverse pretrial publicity, including Governor Culver's guest column. *Cf. id.* The court shall also "assembl[e] an unusually large jury pool." *Id.* at 987. If the parties agree, the court will "expand[] the area from which jurors are drawn," exclude areas in which the media saturation is the greatest (such as the Decorah, Iowa, area) and "increas[e] each side's number of peremptory strikes." *Id.* The court will also entertain motions to move the trial within the Northern District of

Iowa after the results of the questionnaires are known. *Id*.

### IV. CONCLUSION

The Motion (docket no. 209) is **DENIED WITH LEAVE TO REFILE**.

**IT IS SO ORDERED.**

**DATED** this 18th day of March, 2009.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA