# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

AGRIPROCESSORS, INC., *et al.*,

        Defendants.

No. 08-CR-1324-LRR

**ORDER**

———————————

## *TABLE OF CONTENTS*

**I.**    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

**II.**   **RELEVANT PRIOR PROCEEDINGS** . . . . . . . . . . . . . . . . . . . . . . . . . *1*
     **A.**    **Sixth Superseding Indictment** . . . . . . . . . . . . . . . . . . . . . . . . . . *1*
     **B.**    **Amended Third Motion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*

**III.**  **THE MERITS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*
     **A.**    **Outline of Parties' Arguments** . . . . . . . . . . . . . . . . . . . . . . . . . *16*
     **B.**    **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *17*

**IV.**  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *22*

## *I. INTRODUCTION*

The matter before the court is Defendant Sholom Rubashkin's "Amended Motion to Sever Counts 1-74 and Forfeiture Allegation from Counts 75-142" ("Amended Third Motion to Sever") (docket no. 497).

## *II. RELEVANT PRIOR PROCEEDINGS*

### *A. Sixth Superseding Indictment*

On May 14, 2009, a grand jury returned the Sixth Superseding Indictment (docket no. 464) against Defendants Agriprocessors, Inc. ("Agriprocessors"), Sholom Rubashkin, Brent Beebe, Hosam Amara and Zeev Levi. The Sixth Superseding Indictment contains 142 counts and a forfeiture allegation.

Count 1 charges all Defendants with Conspiracy to Harbor Undocumented Aliens for Profit, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i). The conduct alleged in Count 1 "[b]eg[an] on an unknown date and continu[ed] to at least May 2008." Sixth Superseding Indictment (docket no. 464-1), at 9.

Counts 2 through 34 charge Defendants Agriprocessors and Rubashkin with Harboring Undocumented Aliens and Aiding and Abetting the Harboring of Undocumented Aliens for Profit, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), 1324(a)(1)(A)(iv), 1324(a)(1)(A)(v)(ii), 1324(a)(1)(B)(i).[1] The 33 undocumented aliens allegedly harbored are: Sarahi Acevedo-Murillo (Count 2); Luis Miguel Becera-Guajardo (Count 3); Alejandro Bustamante-Ramirez (Count 4); Fidelio Calicio-Sajche (Count 5); Eliazar Cana-Melendres (Count 6); Salvador Caquach-Hernandez (Count 7); Jose Alfredo Casteneda-Guillen (Count 8); Noe Castillo-Ordonez (Count 9); Miguel Gabriel Chavez-Figueroa (Count 10); Elvira Esparza-Ramos (Count 11); Ciro Garcia-Hernandez (Count 12); Inocencio Hernandez-Sifuentes (Count 13); Carlos Ixen-Choc (Count 14); Edwin Samuel Junech-Pastor (Count 15); Gilmar Alexander Lopez-Garcia (Count 16); Joel Lopez-Perez (Count 17); Elder Robinson Lopez-Lux (Count 18); Alfredo Lopez-Martinez (Count 19); Osbaldo Lopez-Becerra (Count 20); Cruz-Adelso Lopez-Marroquin (Count 21); Vincente Machic-Tasej (Count 22); Uriel Migdael Melendrez-Guzman (Count 23); Victor Moncada-Nava (Count 24); Norberto Nava-Davila (Count 25); Raul Nunez-Moncada (Count 26); Jonas Ordonez-Alquijay (Count 27); Rony Otoniel Ordonez-Capir (Count 28); Wilfredo Rodriguez-Meza (Count 29); Daniel Sagche-Chajon (Count 30); Mariano Tajtaj-Lopez (Count 31); Leandro Tajtaj-Lopez (Count 32); Antolin Trinidad-Candido (Count 33); and Svitlana Yudina (Count 34). The conduct alleged in Counts 2 through 34 "[b]eg[an] on an unknown date and continu[ed] to at least May 2008." Sixth Superseding Indictment

---

[1] The Sixth Superseding Indictment repeatedly refers to this subparagraph erroneously as "1324(a)(1)(B)(I)."

(docket no. 464-1), at 12.

Counts 35 though 51 charge Defendants Agriprocessors, Rubashkin and Amara with Harboring Undocumented Aliens and Aiding and Abetting the Harboring of Undocumented Aliens for Profit, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), 1324(a)(1)(A)(iv), 1324(a)(1)(A)(v)(II), 1324(a)(1)(B)(i). The 17 undocumented aliens allegedly harbored are: Enmer Orlando Azurdia-Jerez (Count 35); Elman Freddy Gomez-Granados (Count 36); Ignacio Guerrero-Espinoza (Count 37); Natael Hidalgo-Perez (Count 38); Yadira Hidalgo-Perez (Count 39); Rudy Israel Junech-Santos (Count 40); Walter Anibal Lopez-Lopez (Count 41); Wilfredo Lopez-Lopez (Count 42); Byron Humberto Lopez-Lux (Count 43); Juan Lopez-Taj (Count 44); Julio Lux-Chamoro (Count 45); Alfredo Marroquin-Argueta (Count 46); Luis Enrique Moncada-Quiroz (Count 47); Ruben Nunez-Munoz (Count 48); Marvin Perez-Gomez (Count 49); Luis Enrique Sagche-Fuentes (Count 50); and Rosita Trejo-Pinales (Count 51). The conduct alleged in Counts 35 through 51 "[b]eg[an] on an unknown date and continu[ed] to at least May 2008." Sixth Superseding Indictment (docket no. 464-1), at 15.

Counts 52 through 58 charge Defendants Agriprocessors, Rubashkin, Amara and Levi with Harboring Undocumented Aliens and Aiding and Abetting the Harboring of Undocumented Aliens for Profit, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), 1324(a)(1)(A)(iv), 1324(a)(1)(A)(v)(II), 1324(a)(1)(B)(i). The 7 undocumented aliens allegedly harbored are: Crispin Camarillo-Valencia (Count 52); Maria Patricia Hernandez-Loera (Count 53); Jesus Loera-Gallegos (Count 54); Leonides Ordonez-Lopez (Count 55); Bulmaro Paredes-Morado (Count 56); Silvia Ruiz-Choy (Count 57); and Antonio Vasquez-Saragosa (Count 58). The conduct alleged in Counts 52 through 58 "[b]eg[an] on an unknown date and continu[ed] to at least May 2008." Sixth Superseding Indictment (docket no. 464-1), at 16.

Counts 59 through 72 charge Defendants Agriprocessors, Rubashkin and Beebe with

Harboring Undocumented Aliens and Aiding and Abetting the Harboring of Undocumented Aliens for Profit, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), 1324(a)(1)(A)(iv), 1324(a)(1)(A)(v)(II), 1324(a)(1)(B)(i). The 14 undocumented aliens allegedly harbored are: Alejandro Bustamante-Ramirez (Count 59); Ana Patricia Calel-Lopez (Count 60); Ana Camarillo-Valencia (Count 61); Olena Chehovska (Count 62); Otto Ramiro Garcia-Barillas (Count 63); Ricardo Gomez-Lopez (Count 64); Fernando Gutierrez-Almaraz (Count 65); Monica Hernandez-Vidals (Count 66); Dibrey Lopez-Lopez (Count 67); Reynaldo Lopez-Nunez (Count 68); Josue Muj-Ixen (Count 69); Horacio Quiroz-Hernandez (Count 70); Noel Torres-Espinoza (Count 71); and Maria De La Cruz Valdez-Macias (Count 72). The conduct alleged in Counts 59 through 72 "[b]eg[an] on an unknown date and continu[ed] to at least May 2008." Sixth Superseding Indictment (docket no. 464-1), at 18.

Count 73 charges all Defendants with Conspiracy to Commit Document Fraud, in violation of 18 U.S.C. § 371. Count 73 alleges 34 overt acts. The conduct alleged in Count 73 occurred "[i]n about April and May 2008." Sixth Superseding Indictment (docket no. 464-1), at 19.

Count 74 charges all Defendants with Aiding and Abetting Document Fraud, in violation of in violation of 18 U.S.C. §§ 1546(a) and 2. The conduct alleged in Count 74 occurred "[i]n about April and May 2008." Sixth Superseding Indictment (docket no. 464-1), at 25.

Counts 75 through 88 charge Defendants Agriprocessors and Rubashkin with Bank Fraud, in violation of 18 U.S.C. § 1344.[2] There are allegedly three components to the "scheme to defraud": (1) "[c]oncealment and [f]alse [s]tatements [r]egarding [c]ompliance with the [l]aw"; (2) "[f]raudulent [d]iversion of [b]ank [c]ollateral ([a]ccounts [r]eceivable) and [c]oncealment"; and (3) "[f]raudulent [c]reation of [f]alse [a]ccounts [r]eceivable and

---

[2] Counts 75 through 88 erroneously purport to reallege "the Overt Acts alleged in Count 3." Sixth Superseding Indictment (docket no. 464-1), at 26.

[c]oncealment." Sixth Superseding Indictment (docket no. 464-1), at 26, 28 & 31. The conduct alleged in Counts 75 through 88 "[b]eg[an] on a date unknown to the grand jury and continu[ed] through about October 2008." *Id.* at 26. More specifically, the grand jury alleges that a bank advanced money to Agriprocessors on the following 14 dates and in the following 14 amounts as a result of fraud: $2,900,000 on September 4, 2007 (Count 75); $525,000 on October 1, 2007 (Count 76); $825,000 on November 1, 2007 (Count 77); $1,210,000 on December 3, 2007 (Count 78); $1,550,000 on January 2, 2008 (Count 79); $640,000 on February 1, 2008 (Count 80); $1,064,000 on March 3, 2008 (Count 81); $1,579,000 on April 1, 2008 (Count 82); $1,343,000 on May 1, 2008 (Count 83); $1,035,000 on June 2, 2008 (Count 84); $1,125,000 on July 1, 2008 (Count 85); $475,000 on August 1, 2008 (Count 86); $615,000 on September 2, 2008 (Count 87); and $1,100,000 on October 7, 2008 (Count 88).

Counts 89 through 102 charge Defendants Agriprocessors and Rubashkin with False Statements and Reports to a Bank, in violation of 18 U.S.C. § 1014.[3] The conduct alleged in Counts 89 through 102 occurred "[o]n or about" the following dates: September 4, 2007 (Count 89); October 1, 2007 (Count 90); November 1, 2007 (Count 91); December 3, 2007 (Count 92); January 2, 2008 (Count 93); February 1, 2008 (Count 94); March 3, 2008 (Count 95); April 1, 2008 (Count 96); May 1, 2008 (Count 97); June 2, 2008 (Count 98); July 1, 2008 (Count 99); August 1, 2008 (Count 100); September 2, 2008 (Count 101); and October 7, 2008 (Count 102). Sixth Superseding Indictment (docket no. 464-1), at 34.

Count 103 charges Defendants Agriprocessors and Rubashkin with False Statements

---

[3] Counts 89 through 102 erroneously purport to reallege "the Overt Acts alleged in Count 3, and the Scheme to Defraud allegations from Counts 12 through 25." Sixth Superseding Indictment (docket no. 464-1), at 34.

and Reports to a Bank, in violation of 18 U.S.C. § 1014.[4]  The conduct alleged in Count 103 occurred "[i]n about the middle of May 2008, and shortly after the May 12, 2008, ICE worksite enforcement action."  Sixth Superseding Indictment (docket no. 464-1), at 36.

Counts 104 through 112 charge Defendants Agriprocessors and Rubashkin with False Statements and Reports to a Bank, in violation of 18 U.S.C. § 1014.[5]  The conduct allged in Counts 104 through 112 occurred on 9 separate dates "by the customers, for the time periods, and in the amounts identified" in a nine-page table set forth within the Sixth Superseding Indictment.  *See* Sixth Superseding Indictment (docket no. 464-1), at 37 (prefatory remarks), 38-46 (table).  Specifically:

Count 104 charges that, on or about February 29, 2008, Defendants Agriprocessors and Rubashkin falsely overstated that, as of January 25, 2008, C.G.M. owed Agriprocessors $1,217,961.02; T.C.H. owed Agriprocessors $617,301.95; V.H. owed Agriprocessors $704,042.14; C.M.P. owed Agriprocessors $944,230.68; T.C.P. owed Agriprocessors $873,458.21; D.W. owed Agriprocessors $1,142,424.00; and G.W.K. owed Agriprocessors $475,543.90.

Count 105 charges that, on or about March 27, 2008, Defendants Agriprocessors and Rubashkin falsely overstated that, as of February 29, 2008, C.G.M. owed Agriprocessors $1,140,107.48; T.C.H. owed Agriprocessors $941,763.00; V.H. owed Agriprocessors $951,679.19; C.M.P. owed Agriprocessors $1,005,032.64; T.C.P. owed Agriprocessors $1,039,590.07; D.W. owed Agriprocessors $1,076,736.42; and G.W.K. owed Agriprocessors $428,263.74.

---

[4] Count 103 erroneously purports to reallege "the Overt Acts alleged in Count 3, and the Scheme to Defraud allegations from Counts 12 through 25."  Sixth Superseding Indictment (docket no. 464-1), at 36.

[5] Counts 104 through 112 erroneously purport to reallege "the Overt Acts alleged in Count 3, and the Scheme to Defraud allegations from Counts 12 through 25."  Sixth Superseding Indictment (docket no. 464-1), at 37.

Count 106 charges that, on or about April 18, 2008, Defendants Agriprocessors and Rubashkin falsely overstated that, as of March 28, 2008, C.G.M. owed Agriprocessors $1,145,873.54; T.C.H. owed Agriprocessors $521,013.00; V.H. owed Agriprocessors $627,244.00; C.M.P. owed Agriprocessors $1,009,409.75; T.C.P. owed Agriprocessors $1,084,594.56; D.W. owed Agriprocessors $1,011.268.88; and G.W.K. owed Agriprocessors $427,219.45.

Count 107 charges that, on or about May 20, 2008, Defendants Agriprocessors and Rubashkin falsely overstated that, as of April 25, 2008, C.G.M. owed Agriprocessors $1,301,853.77; T.C.H. owed Agriprocessors $983,317.75; V.H. owed Agriprocessors $854,911.31; C.M.P. owed Agriprocessors $707,597.62; T.C.P. owed Agriprocessors $876,468.13; D.W. owed Agriprocessors $1,182,945.24; and G.W.K. owed Agriprocessors $200,313.84.

Count 108 charges that, on or about July 2, 2008, Defendants Agriprocessors and Rubashkin falsely overstated that, as of May 30, 2008, C.G.M. owed Agriprocessors $1,308,367.19; T.C.H. owed Agriprocessors $1,172,194.63; V.H. owed Agriprocessors $924,838.05; C.M.P. owed Agriprocessors $282,361.24; T.C.P. owed Agriprocessors $1,085,911.24; D.W. owed Agriprocessors $1,242,818.93; and G.W.K. owed Agriprocessors $180,158.93.

Count 109 charges that, "on or about July or August, 2008," Sixth Superseding Indictment (docket no. 464-1), at 43, Defendants Agriprocessors and Rubashkin falsely overstated that, as of June 27, 2008, C.G.M. owed Agriprocessors $1,380,244.72; T.C.H. owed Agriprocessors $1,076,961.12; V.H. owed Agriprocessors $799,429.18; C.M.P. owed Agriprocessors $646,608.20; T.C.P. owed Agriprocessors $1,765,746.75; D.W. owed Agriprocessors $1,171,658.12; and G.W.K. owed Agriprocessors $420,334.92.

Count 110 charges that, on or about September 3, 2008, Defendants Agriprocessors and Rubashkin falsely overstated that, as of July 25, 2008, C.G.M. owed Agriprocessors

$1,162,035.79; T.C.H. owed Agriprocessors $787,025.60; V.H. owed Agriprocessors $893,308.26; C.M.P. owed Agriprocessors $1,854,451.91; T.C.P. owed Agriprocessors $2,072,638.81; D.W. owed Agriprocessors $943,772.77; and G.W.K. owed Agriprocessors $831,111.23.

Count 111 charges that, "on or about September or October, 2008," Sixth Superseding Indictment (docket no. 464-1), at 45, Defendants Agriprocessors and Rubashkin falsely overstated that, as of August 29, 2008, C.G.M. owed Agriprocessors $1,280,596.73; T.C.H. owed Agriprocessors $1,113,035.19; V.H. owed Agriprocessors $1,176,335.70; C.M.P. owed Agriprocessors $2,346,163.56; T.C.P. owed Agriprocessors $1,916,348.03; D.W. owed Agriprocessors $836,341.60; and G.W.K. owed Agriprocessors $1,029,422.24.

Count 112 charges that, "on or about October 2008," Sixth Superseding Indictment (docket no. 464-1), at 46, Defendants Agriprocessors and Rubashkin falsely overstated that, as of September 26, 2008, C.G.M. owed Agriprocessors $1,502,701.61; T.C.H. owed Agriprocessors $993,038.79; V.H. owed Agriprocessors $912,136.38; C.M.P. owed Agriprocessors $1,474,421.37; T.C.P. owed Agriprocessors $1,467,883.58; D.W. owed Agriprocessors $1,394,769.50; and G.W.K. owed Agriprocessors $752,464.06.

Counts 113 through 122 charge Defendants Agriprocessors and Rubashkin with Money Laundering and Aiding and Abetting Money Laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i) and 2.[6]

> Beginning on a date unknown to the grand jury, and continuing through about October 2008 . . . [D]efendants [Agriprocessors] and [Rubashkin] did knowingly conduct and aid and abet others in conducting financial transactions which involved the proceeds of a specified unlawful activity (bank

---

[6] Counts 113 through 122 erroneously purport to reallege "the Overt Acts alleged in Count 3, and the Scheme to Defraud allegations from Counts 12 through 25." Sixth Superseding Indictment (docket no. 464-1), at 46.

fraud in violation of Title 18, United States Code, Section 1344; making false statements and reports to a bank in violation of Title 18, United States Code, Section 1014; and harboring undocumented aliens and conspiracy to harbor in violation of Title 8, United States Code, Section 1324(a) *et seq.*) with the intent to promote the carrying on of specified unlawful activity, and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

Sixth Superseding Indictment (docket no. 464-1), at 47. More specifically:

Count 113 charges that, on August 9, 2007, Defendants Agriprocessors and Rubashkin caused check numbers 2371 and 2372 from "Kosher Community," in the amounts of $42,240.86 and $48,685.03, respectively, to be deposited at the Decorah Bank and Trust Company.

Count 114 charges that, on September 19, 2007, Defendants Agriprocessors and Rubashkin caused check numbers 3274 and 3299 from "Torah Education," in the amounts of $38,464.92 and $18,768.46, respectively, to be deposited at the Decorah Bank and Trust Company.

Count 115 charges that, on October 17, 2007, Defendants Agriprocessors and Rubashkin caused check numbers 2506 and 2507 from "Kosher Community," in the amounts of $41,066.57 and $42,525.56, respectively, to be deposited at the Decorah Bank and Trust Company.

Count 116 charges that, on November 14, 2007, Defendants Agriprocessors and Rubashkin caused check numbers 3344 and 3349 from "Torah Education," in the amounts of $32,300.86 and $35,362.44, respectively, to be deposited at the Decorah Bank and Trust Company.

Count 117 charges that, on December 11, 2007, Defendants Agriprocessors and

Rubashkin caused check numbers 2744, 2745 and 2746 from "Kosher Community," in the amounts of $42,899.56, $43,888.99 and $38,848.92, respectively, to be deposited at the Decorah Bank and Trust Company.

Count 118 charges that, on January 15, 2008, Defendants Agriprocessors and Rubashkin caused check numbers 3378 and 3379 from "Torah Education," in the amounts of $34,897.55 and $32,586.58, respectively, to be deposited at the Decorah Bank and Trust Company.

Count 119 charges that, on February 26, 2008, Defendants Agriprocessors and Rubashkin caused check numbers 3069, 3070, 3071 and 3072 from "Kosher Community," in the amounts of $78,890.14, $88,593.45, $79,222.48 and $88,259.26, respectively, to be deposited at the Decorah Bank and Trust Company.

Count 120 charges that, on March 18, 2008, Defendants Agriprocessors and Rubashkin caused check numbers 3365 and 3366 from "Torah Education," in the amounts of $48,660.88 and $38,982.46, respectively, to be deposited at the Decorah Bank and Trust Company.

Count 121 charges that, on April 15, 2008, Defendants Agriprocessors and Rubashkin caused check numbers 3632, 3668 and 3692 from "Torah Education," in the amounts of $78,888.56, $78,458.55 and $98,458.48, respectively, to be deposited at the Decorah Bank and Trust Company.

Count 122 charges that, on May 13, 2008, Defendants Agriprocessors and Rubashkin caused check numbers 3435, 3436, 3437 and 3438 from "Torah Education," in the amounts of $88,958.26, $59,158.25, $97,859.28 and $60,259.36, respectively, to be deposited at the Decorah Bank and Trust Company.

Counts 123 through 142 charge Defendants Rubashkin and Agriprocessors with Willful Violations of an Order of the Secretary of Agriculture and Aiding and Abetting Willful Violations of an Order of the Secretary of Agriculture, in violation of 7 U.S.C.

§ 195 and 18 U.S.C. § 2. The grand jury alleges that, on March 7, 2002, the United States Secretary of Agriculture ordered Defendant Agriprocessors "and its agents and employees to cease and desist from" failing to pay in a timely manner for livestock purchases and "failing to deposit checks issued in payment for livestock in the mail before the close of the next business day after the purchase of such livestock as required by law." Sixth Superseding Indictment (docket no. 464-1), at 49. The grand jury alleges Defendants Agriprocessors and Rubashkin willfully violated the Secretary's order and aided and abetted violations of the order as follows:

Count 123 charges that Defendants Agriprocessors and Rubashkin deposited a check in the amount of $38,207.54 in the mail to "Waukon Iowa Cattle Supplier" on February 8, 2008 when livestock was purchased on February 4, 2008, and payment was due on February 5, 2008.

Count 124 charges that Defendants Agriprocessors and Rubashkin dated a check "February 15, 2008," in the amount of $96,497.88 to "Chicago Cattle Supplier" when livestock was purchased on February 11, 2008, and payment was due on February 12, 2008.

Count 125 charges that Defendants Agriprocessors and Rubashkin dated a check "February 25, 2008," in the amount of $47,219.00 to "Marshalltown Iowa Cattle Supplier" when livestock was purchased on February 13, 2008, and payment was due on February 14, 2008.

Count 126 charges that Defendants Agriprocessors and Rubashkin dated a check "February 25, 2008," in the amount of $91,698.55 to "Minnesota Cattle Supplier" when livestock was purchased on February 14, 2008, and payment was due on February 15, 2008.

Count 127 charges that Defendants Agriprocessors and Rubashkin deposited a check in the amount of $99,435.10 in the mail to "Waukon Iowa Cattle Supplier" on February

19, 2008 when livestock was purchased on February 14, 2008, and payment was due on February 15, 2008.

Count 128 charges that Defendants Agriprocessors and Rubashkin dated a check "February 19, 2008," in the amount of $90,076.74 to "Walnut Illinois Cattle Supplier" when livestock was purchased on February 14, 2008, and payment was due on February 15, 2008.

Count 129 charges that Defendants Agriprocessors and Rubashkin deposited a check in the amount of $71,465,27 in the mail to "Waukon Iowa Cattle Supplier" on February 26, 2008 when livestock was purchased on February 21, 2008, and payment was due on February 22, 2008.

Count 130 charges Defendants Agriprocessors and Rubashkin deposited a check in the amount of $76,937.72 in the mail to "Waukon Iowa Cattle Supplier" on March 4, 2008 when livestock was purchased on February 27, 2008, and payment was due on February 28, 2008.

Count 131 charges Defendants Agriprocessors and Rubashkin deposited a check in the amount of $88,698.48 in the mail to "Waukon Iowa Cattle Supplier" on March 4, 2008 when livestock was purchased on February 28, 2008, and payment was due on February 29, 2008.

Count 132 charges Defendants Agriprocessors and Rubashkin dated a check "March 7, 2008," in the amount of $47,938.32 to "Aplington Iowa Cattle Supplier" when livestock was purchased on March 4, 2008, and payment was due on March 5, 2008.

Count 133 charges Defendants Agriprocessors and Rubashkin dated a check "March 7, 2008," in the amount of $49,627.02 to "Ledyard Iowa Cattle Supplier" when livestock was purchased on March 4, 2008, and payment was due on March 5, 2008.

Count 134 charges Defendants Agriprocessors and Rubashkin dated a check "March 7, 2008," in the amount of $14,113.50 to "Ames Iowa Cattle Supplier" when livestock

was purchased on March 4, 2008, and payment was due on March 5, 2008.

Count 135 charges Defendants Agriprocessors and Rubashkin dated a check "March 7, 2008," in the amount of $189,987.73 to "Waverly Iowa Cattle Supplier" when livestock was purchased on March 4, 2008, and payment was due on March 5, 2008.

Count 136 charges Defendants Agriprocessors and Rubashkin hand delivered a check in the amount of $93,680.45 on March 25, 2008 to "Waukon Iowa Cattle Supplier" when livestock was purchased on March 20, 2008, and payment was due on March 21, 2008.

Count 137 charges Defendants Agriprocessors and Rubashkin hand delivered a check in the amount of $149,214.77 on April 2, 2008 to "Waukon Iowa Cattle Supplier" when livestock was purchased on March 27, 2008, and payment was due on March 28, 2008.

Count 138 charges Defendants Agriprocessors and Rubashkin dated a check "April 2, 2008," in the amount of $7,371.60 to "Aplington Iowa Cattle Supplier" when livestock was purchased on March 28, 2008, and payment was due on March 29, 2008.

Count 139 charges Defendants Agriprocessors and Rubashkin hand delivered a check in the amount of $43,871.28 on April 5, 2008 to "Waukon Iowa Cattle Supplier" when livestock was purchased on March 31, 2008, and payment was due on April 1, 2008.

Count 140 charges Defendants Agriprocessors and Rubashkin hand delivered a check in the amount of $77,170.06 on April 9, 2008 to "Waukon Iowa Cattle Supplier" when livestock was purchased on April 3, 2008, and payment was due on April 4, 2008.

Count 141 charges Defendants Agriprocessors and Rubashkin hand delivered a check in the amount of $112,657.10 on April 11, 2008 to "Waverly Iowa Cattle Supplier" when livestock was purchased on April 8, 2008, and payment was due on April 9, 2008.

Count 142 charges Defendants Agriprocessors and Rubashkin express mailed a

check via UPS in the amount of $48,727.51 on April 21, 2008 to "Waverly Iowa Cattle Supplier" when livestock was purchased on April 15, 2008, and payment was due on April 16, 2008.

Finally, the Sixth Superseding Indictment contains a forfeiture allegation. Pursuant to 8 U.S.C. § 1324(b), 18 U.S.C. § 982(a)(6)(A) and 28 U.S.C. § 2461(c), the government seeks from all Defendants "the proceeds and gross proceeds of [the Defendants' alleged criminal law violations as set forth in Counts 1 through 72], any property traceable to such proceeds, and any property, real or personal, that was used to facilitate, or was intended to facilitate, the commission of the offenses of which [D]efendants are convicted . . . ." Sixth Superseding Indictment (docket no. 464-1), at 51. In particular, the government seeks forfeiture of Defendant Agriprocessors' corporate name, trademarks and corporate stock. Defendant Agriprocessors' trademarks include "Iowa Best Beef," "Shor Habor," "Aaron's Best" and "Rubashkin." *Id.* at 52.

### B. Amended Third Motion

On January 30, 2009, Defendant Rubashkin filed a Motion to Sever Counts ("First Motion to Sever") (docket no. 213). Defendant sought to sever the then-pending Fourth Superseding Indictment (docket no. 177) into four parts. On February 4 and 17, 2009, respectively, Defendants Beebe and Agriprocessors filed Joinders (docket no. 277 & 333) to the First Motion to Sever. On February 24, 2009, the government filed a Resistance (docket no. 370) to the First Motion to Sever. On March 20, 2009, Defendant Beebe formally withdrew his Joinder. *See* Written Withdrawal of Joinder (docket no. 400), at 1.

On February 23, 2009, the court held a hearing on the First Motion to Sever. Assistant United States Attorneys Sean R. Berry and C.J. Williams represented the government. Attorneys Guy R. Cook and F. Montgomery Brown represented Defendant Rubashkin. Attorney James A. Clarity, III represented Defendant Agriprocessors.

Attorney Raphael M. Scheetz represented Defendant Beebe. Defendants Rubashkin and Beebe were personally present.

On March 31, 2009, before the court ruled on the First Motion to Sever, the grand jury returned the Fifth Superseding Indictment (docket no. 413). Because the Fifth Superseding Indictment was arguably substantially different than the Fourth Superseding Indictment, on April 1, 2009, the court denied the First Motion to Sever with leave to refile on or before April 10, 2009. Order (docket no. 419), at 1.

On April 10, 2009, Defendant Rubashkin filed a Motion to Sever ("Second Motion to Sever") (docket no. 433). Defendant sought to sever the Fifth Superseding Indictment into two parts. On April 20, 2009, the government filed a Resistance (docket no. 438). On April 27, 2009, Defendant Rubashkin filed a Reply (docket no. 448).

On May 14, 2009, before the court ruled on the Second Motion to Sever, the grand jury returned the Sixth Superseding Indictment (docket no. 464). On June 1, 2009, Defendant Rubashkin filed a Motion to Sever (docket no. 494) ("Third Motion to Sever"), in which he "incorporate[ed] the law and argument from his [Second Motion to Sever] and Reply to the [g]overnment's Resistance to the same." Third Motion to Sever (docket no. 494), at 4. On June 2, 2009, Defendant Rubashkin filed the Amended Third Motion to Sever. On June 3, 2009, Defendant Agriprocessors filed a Joinder (docket no. 498) to the Amended Third Motion to Sever.

On June 4, 2009, the court held a hearing on the Amended Third Motion to Sever. Assistant United States Attorneys C.J. Williams and Peter E. Deegan represented the government. Attorneys F. Montgomery Brown and Adam Zenor represented Defendant Rubashkin, who was personally present. Attorney Meghan Sloma appeared telephonically on behalf of Defendant Agriprocessors. Attorney Raphael Scheetz represented Defendant Beebe, who was personally present.

At the hearing on the Amended Third Motion to Sever, Attorney Scheetz indicated

that Defendant Beebe took no position on the Amended Third Motion to Sever. Attorney Sloma indicated that Defendant Agriprocessors joined the Amended Third Motion to Sever. The government indicated it wished to stand on its Resistance (docket no. 438) to the Second Motion to Sever because, in its view, the Fifth Superseding Indictment and Sixth Superseding Indictment were materially similar. On June 11, 2009, Defendant Agriprocessors filed an Amended Joinder (docket no. 508) to the Amended Third Motion to Sever.

The court finds that the Amended Third Motion to Sever is fully submitted and ready for decision.

### III. THE MERITS

#### A. Outline of the Parties' Arguments

Defendants Rubashkin and Agriprocessors seek to sever the Sixth Superseding Indictment into two parts, pursuant to Federal Rule of Criminal Procedure 8 and 14(a).[7] Specifically, Defendants Rubashkin and Agriprocessors ask the court to order separate trials (1) on Counts 1 through 74 ("the Immigration Counts") and (2) on Counts 75 through 142 ("the Financial Counts").

As a threshold matter, Defendants Rubashkin and Agriprocessors argue that the 142 counts are improperly joined under Federal Rule of Criminal Procedure 8. In the alternative, Defendants Rubashkin and Agriprocessors argue that joinder of all 142 counts into a single, unified proceeding would be unduly prejudicial under Federal Rule of Criminal Procedure 14. The government resists the Motion in all respects.

#### B. Analysis

The court assumes without deciding that Counts 1 through 142 are properly joined under Federal Rule of Criminal Procedure 8. Nonetheless the court finds that joinder of

---

[7] Defendants Rubashkin and Agriprocessors also argue severance is required under the Due Process Clause of the Fifth Amendment. The court need not reach this argument.

16

all 142 counts in a single, unified proceeding would "appear[] to prejudice" Defendants Rubashkin and Agriprocessors. Fed. R. Crim. P. 14(a). The court shall order separate trials on the Immigration Counts and the Financial Counts, pursuant to Federal Rule of Criminal Procedure 14(a). The court holds severance is necessary to preserve the rights of Defendants Rubashkin and Agriprocessors to a fair trial.

By its express terms, Federal Rule of Criminal Procedure 14 grants the court the discretion to "order separate trials of counts" when "the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant . . . ." Fed. R. Crim. P. 14(a); *see, e.g.*, *United States v. Al-Esawi*, 560 F.3d 888, 891 (8th Cir. 2009) ("Rule 14 . . . provides that the district court may order separate trials of counts or grant a severance if it appears that a defendant . . . is prejudiced by a joinder of offenses."). A district court possesses broad discretion as to whether to grant or deny a motion to sever an indictment. *See, e.g., Al-Esawi*, 560 F.3d at 891 (reviewing for an abuse of discretion).

Rule 14 stands as a bulwark against artfully pled indictments that manage to pass muster under the looser requirements of Rule 8. *See United States v. Randazzo*, 80 F.3d 623, 627 (1st Cir. 2006) ("[Rule 14] provides a separate layer of protection where it is most needed."). It also serves as an important check against nearly unfettered prosecutorial discretion in the charging of a criminal case. *See id.* Rule 14 recognizes that, while joinder is "designed to promote economy and efficiency and to avoid a multiplicity of trials," joinder is only permissible if "these objectives can be achieved without substantial prejudice to the right of . . . defendants to a fair trial." *Zafiro v. United States*, 506 U.S. 534, 540 (1993) (citation omitted); *see United States v. Starr*, 584 F.2d 235, 238 (8th Cir. 1978) ("[A] joint trial may not be had at the expense of a defendant's right to a fundamentally fair trial.").

Nonetheless, district courts rarely grant relief under Rule 14. There is a strong presumption in the law in favor of joinder and against severance. *See, e.g., United States*

*v. Ruiz*, 412 F.3d 871, 886 (8th Cir. 2005) ("The presumption against severing properly joined cases is strong . . . ."); *United States v. Darden*, 70 F.3d 1507, 1526 (8th Cir. 1995) (stating that Rules 8 and 14 should be construed in favor of joinder). It is settled that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Motions to sever are rarely successful in the Northern District of Iowa. *See, e.g., United States v. Lucas*, No. 06-CR-1047-LRR, 2007 WL 172009 (N.D. Iowa Jan. 17, 2007) (Reade, J.), *aff'd*, 521 F.3d 861 (8th Cir. 2008); *United States v. Cooper*, No. 06-CR-35-LRR, 2006 WL 2095217 (N.D. Iowa Jul. 26, 2006) (Reade, J.); *United States v. Hewett*, No. 99-CR-3012-MWB, 2000 WL 34031794 (N.D. Iowa Apr. 24, 2000) (Bennett, C.J.). The undersigned has great faith in the jury system and, in particular, the ability of Iowa jurors to do justice even when the indictment and jury instructions are long and complicated. *Cf. Hewett*, 2000 WL 34031794, at *12 ("It must be recalled that 'there is a presumption that the jury will be able to sort out the evidence applicable to each defendant and render its verdict accordingly.'" (quoting *United States v. Moreno*, 933 F.2d 362, 371) (6th Cir. 1988)).

In *this* particular case, however, the court finds that joinder of all 142 counts in a single proceeding would prevent a jury from making a reliable judgment about the guilt or innocence of Defendants Rubashkin and Agriprocessors. The court finds that this is one of those rare cases in which the presumption in favor of a single, unified proceeding is overcome. Put simply, it would be a monumental task for a single jury to keep all 5 defendants, 142 counts, 8 distinct crimes in this case straight.[8] The risk of prejudice to

---

[8] Indeed, it took the undersigned approximately twelve pages and no small amount of time to simply *summarize* the Sixth Superseding Indictment in Part II of the instant Order.

Defendants Rubashkin and Agriprocessors is simply too high.

In the court's view, severance is necessary because a single jury would be "unable to compartmentalize the evidence" as to all 5 defendants, 142 counts and 8 distinct crimes. *Cf. United States v. Agofsky*, 20 F.3d 866, 871 (8th Cir. 1994) (holding district court did not abuse its discretion in declining to grant motion to sever, where "[t]he trial involved only two defendants charged with three counts each"). The Sixth Superseding Indictment encompasses a wide array of distinct alleged conduct by different actors (including an untold number of coconspirators). The alleged conduct involves immigration-related offenses, financial crimes and violations of orders of the United States Secretary of Agriculture. The alleged financial crimes are obviously complex. However, even the immigration-related offenses, which in some other cases may be somewhat routine, are complicated in this case. For example, Count 73 alone alleges 34 overt acts. Moreover, the government alleges markedly different levels of culpability amongst the five defendants. One of the defendants is a corporation, an unusual occurrence and a complicating factor.

The present case is the archetypal case in which relief under Rule 14 is warranted. The Supreme Court has recognized that, "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability, [the] risk of prejudice is heightened" and "a district court is more likely to determine that separate trials are necessary . . . ." *Zafiro*, 506 U.S. at 540. Further, "[i]t is obvious that[,] as the number of counts is increased, the record becomes more complex and it is more difficult for a juror to keep the various charges against the several defendants and the testimony as to each of them separate in his mind." *United States v. Branker*, 395 F.2d 881, 887-88 (2d Cir. 1968) (cited with approval by *Peterson v. United States*, 405 F.2d 102, 105 n.4 (8th Cir. 1968)). "[T]rials involving large numbers of separate offenses are not the favorites of the law, and they carry the built-in hazards that confusion or abuse may

develop in such a degree during the course of trial as to necessitate . . . severance . . . in order to avoid undue prejudice." *Daly v. United States*, 342 F.2d 932, 933 (D.C. Cir. 1964) (per curiam).

The court is mindful that the factual allegations for many of the 142 counts overlap and granting the Amended Third Motion to Sever will likely result in two juries hearing some of the same evidence. For example, one of the government's multiple theories of bank fraud is that Defendants Agriprocessors and Rubashkin failed to notify their bank that Defendant Agriprocessors was engaged in illegal activity, *e.g.*, the large-scale employment of undocumented aliens. *See, e.g.*, Sixth Superseding Indictment (docket no. 464-1), at 27 ("Defendant RUBASHKIN and Defendant AGRIPROCESSORS falsely claimed defendant AGRIPROCESSORS was in compliance with the Packers Act and other laws and regulations even though, as defendant RUBASHKIN well knew, defendant RUBASHKIN had violated the Packers Act and was knowingly harboring undocumented aliens." (Emphasis in original.)). On the whole, however, the Immigration Counts and the Financial Counts are not similar and it appears the important evidence underlying the Immigration Counts and the Financial Counts revolve around quite different facts. *Cf. United States v. Randazzo*, 80 F.3d 623, 628 (1st Cir. 1996) (discussing Rule 8 and concluding: "Congress did not provide for joinder for unrelated transactions and dissimilar crimes merely because some evidence might be common to all of the counts. Indeed, looking to the *important* evidence, the shrimp and tax counts in this case seem to revolve around quite different facts." (Emphasis in original.)).

This brings the court to a second, distinct species of prejudice Defendant Agriprocessors and Rubashkin would suffer were the court to deny the Amended Third Motion to Sever: the possibility of prejudicial "spill over" of evidence amongst the separate counts. The Eighth Circuit Court of Appeals has recognized that

> [p]rejudice may result from a possibility that the jury might
> use evidence of one crime to infer guilt on the other or that the

> jury might cumulate the evidence to find guilt on all crimes
> when it would not have found guilt if the crimes were
> considered separately.

*United States v. Davis*, 103 F.3d 660, 676 (8th Cir. 1996) (citing *Closs v. Leapley*, 18 F.3d 574, 578 (8th Cir. 1994)). Here, it appears unlikely that all of the evidence underlying the Immigration Counts would be admissible to prove the Financial Counts and *vice versa*. *See, e.g.*, Fed. R. Evid. 403 (providing that even relevant evidence may be excluded if its probative value is substantially outweighed by dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time or needless presentation of cumulative evidence).[9] The danger of unfair evidentiary "spillage," therefore, is real and concrete. Further, the court does not believe this is a case in which limiting instructions would prove effective. It is the undersigned's professional judgment based upon decades of experience as a defense attorney, prosecutor and trial judge that, notwithstanding limiting instructions, there would remain a real and concrete danger that the jury might cumulate the evidence as to the various counts. *Davis*, 103 F.3d at 676. These dangers are heightened in the context of a complex case that involves many defendants, counts and distinct crimes. *See, e.g., United States v. Lane*, 474 U.S. 438, 450 n.13 (1986) (discussing when limiting instructions work and when they do not). "It is much more difficult for jurors to compartmentalize damaging information about one defendant derived from joined counts than it is to compartmentalize evidence against separate defendants joined for trial." *United States v. Lewis*, 787 F.2d 1318, 1321 (9th Cir.), *amended and adhered to*, 798 F.2d 1250 (1986).

Accordingly, the court shall grant the Motion. The court shall sever the Immigration Counts and the forfeiture allegation from the Financial Counts. *Cf. United States v. Shellef*, 507 F.3d 82, 101 (2d Cir. 2007) (holding severance should have been

---

[9] This is a preliminary assessment. It is made in an evidentiary vacuum. It should not be construed as a ruling on any evidentiary dispute that may arise at trial.

ordered where evidence of an improperly joined tax count would not have been admissible as other-acts evidence in a separate trial for money laundering and wire fraud); *United States v. Cambindo Valencia*, 609 F.2d 603, 629 (2d Cir. 1979) (reversing conviction in complex case because of "prejudicial spillover"); *United States v. Paul*, 150 F.R.D. 696, 697-700 (S.D. Fla. 1993) (granting motion to sever of "mega-trial" that involved 100 counts because the danger of prejudicial "spill-over" was too great), *aff'd*, 161 F.3d 20 (11th Cir. 1998) *and* 49 F. App'x 287 (11th Cir. 2002).[10]

## IV. DISPOSITION

The Motion (docket no. 497) is **GRANTED**. The court severs the Sixth

---

[10] Other courts have recognized the burdens so-called "mega-trials" place upon jurors, the parties, counsel and the courts. *See, e.g., United States v. Gallo*, 668 F. Supp. 736, *passim* (E.D.N.Y. 1987) (granting severance in a complex case involving 16 defendants and 22 counts, in which the government alleged a wide array of conduct, including racketeering, obstruction of justice and murder). Some courts have indicated a preference for granting severance motions as a matter of course to avoid megatrials, because the underlying justification for the preference in the law in favor of joinder and against severance—judicial economy—is arguably nonexistent in the context of a megatrial. One judge observed:

> If the court does decide to try the case as a whole, the judge must adjourn the remainder of his or her civil and criminal calendars for an indefinite and protracted period of time. The effect under the individual calendar system is ruinous. The already overburdened docket of the court reaches a breaking point, and the administration of justice in all of the court's cases is unconscionably delayed. The judge effectively presides over a one-case court. Where the judge decides to sever the trial, the court is left with much greater flexibility to administer both that and other cases. The calendar is more easily adjusted and controlled, conflicts are more readily reconciled, and some normalcy remains as to the rest of the court's docket.

*Id*. at 755 (emphasis omitted). Because the court finds that severance is appropriate under Rule 14, however, it need not decide whether to follow this line of cases.

Superseding Indictment (docket no. 464) into two parts for trial: (1) Counts 1 through 74 and (2) Counts 75 through to 142. In other words, the court shall hold two trials: a trial on the Immigration Counts (including the forfeiture allegation) and a trial on the Financial Counts. In due course the court shall schedule a telephonic status conference to discuss the order and scheduling of these two trials.

**IT IS SO ORDERED.**

**DATED** this 25th day of June, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA